IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

ROGER SHELTON, JR.,

      Plaintiff,

v.                        CASE NO. 2:10-cv-00247

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).

Plaintiff, Roger Shelton (hereinafter referred to as "Claimant"), filed applications for SSI and DIB on November 21, 2006, alleging disability as of June 20, 2006, due to heart, neck, back and knee problems, a learning disability, lack of concentration, psychological and control issues, inability to sleep and severe nightmares.  (Tr. at 139-41, 143-47, 183.)  The claims

were denied initially and upon reconsideration. (Tr. at 73-77, 78-82, 88-90, 91-93.)   Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 94.)   The hearing was held on February 20, 2009, before the Honorable James P. Toschi. (Tr. at 26-68.)   By decision dated March 19, 2009, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 12-25.)   The ALJ's decision became the final decision of the Commissioner on January 26, 2010, when the Appeals Council denied Claimant's request for review. (Tr. at 1-3.)   On March 7, 2010, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2009). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is

whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2009). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574

3

(4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 14.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of chronic neck, back and bilateral knee pain, obesity and impulse control disorder. (Tr. at 15.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 17.) The ALJ then found that Claimant has a residual functional capacity for medium work, reduced by nonexertional limitations. (Tr. at 19.) As a result, Claimant can return to his past relevant work as a custodian. (Tr. at 23.) On this basis, benefits were denied. (Tr. at 24.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting

4

Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).
Additionally, the Commissioner, not the court, is charged with
resolving conflicts in the evidence.  Hays v. Sullivan, 907 F.2d
1453, 1456 (4th Cir. 1990).  Nevertheless, the courts "must not
abdicate their traditional functions; they cannot escape their duty
to scrutinize the record as a whole to determine whether the
conclusions reached are rational."  Oppenheim v. Finch, 495 F.2d
396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the
Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was forty years old at the time of the administrative
hearing.  (Tr. at 30.)  Claimant completed the ninth grade and
attained his GED.  (Tr. at 39-40.)  In the past, he worked as a
custodian and for a number of restaurants and hotels in a variety
of positions.  (Tr. at 42-43, 63.)

The Medical Record

The court has reviewed all evidence of record, including the
medical evidence of record, and will summarize the evidence of
record related to Claimant's mental condition briefly below.

Claimant's school records indicate he had a "behavioral
disorder."  (Tr. at 252.)

On April 11, 2007, Ernie Vecchio, M.A. examined Claimant at
the request of the State disability determination service.

Claimant reported anger and emotional problems his entire life resulting in multiple altercations with authorities, job loss, domestic problems and being shot in the stomach after blowing up an automobile with a gasoline bomb.  (Tr. at 297-98.)  Claimant reported a head injury at age five and a learning disability while in school.  (Tr. at 297.)  Claimant reported a history of hospitalization for a suicide attempt as a teenager, but has received no mental health treatment since.  (Tr. at 298.)  Mr. Vecchio diagnosed cognitive disorder, not otherwise specified and intermittent explosive disorder on Axis I and personality disorder not otherwise specified on Axis II.  (Tr. at 301.)

Mr. Vecchio provides the following explanation:

The diagnosis of Cognitive Disorder NOS is made when a neuropsychological impairment caused by brain injury ... effects three functional symptoms (1) intellect which is the information- handling aspect of behavior; (2) emotionality, which concerns feelings and motivations; and (3) control, which has to do with how behavior is expressed.  The claimant's head injury at age five, his learning disability diagnosis in public school, and subsequent behavioral and emotional difficulties suggests undiagnosed head trauma.  Brain damage is experienced as the inability to store, process, accumulate, and retrieve information.  It ... also interferes with emotional control, learning from experience, being sensitive to the emotional needs of others.  The diagnosis of Intermittent Explosive Disorder is made due to a long history of failure to resist aggressive impulses that resulted in serious assaultive acts or destruction of property.  The degree of aggressiveness expressed during the episodes reported were grossly out of proportion to the precipitating psychosocial situation.  (Example: "The police asked me after I beat the guy up why I was smiling or in such a good mood.  I told them I didn't know.") The aggressive episodes and head injury combined are confusing, as they present today as an antisocial

6

personality disorder. The diagnosis of Personality
Disorder NOS is made due to an enduring pattern of inner
experience and behavior that deviates markedly from the
culture. This pattern manifests in how the claimant is
perceiving and interpreting the self, other people, and
events. The range, intensity, lability, and
appropriateness of his emotional responses are in excess.
Interpersonal functioning and impulse control are poor.
The enduring pattern is an inflexible and pervasive
personality dynamic that has lead to clinically
significant distress or impairment in social and
occupational functioning. Its onset can be traced back
at least to adolescence or early adulthood.

(Tr. at 301.)

On April 13, 2007, a State agency medical source completed a

Psychiatric Review Technique form and opined that Claimant's mental

impairments were not severe. (Tr. at 304-16.) The State agency

source wrote that

[t]he CE [Mr. Vecchio] bases his diagnosis on a head
injury that occurred in childhood. This man has had
average intellect. He has a GED which suggests that he
does not have severe deficits in his ability to learn.
The claimant has a legal history in the past, but there
is no evidence that he has current deficits. At the
[consultative examination] he evidenced no severe social
problems. He has no treatment since childhood, and his
report of problems with legal system is based upon his
self report. His report to [Mr. Vecchio] is not
consistent with regard to his report to the [disability
officer]. He had no severe social deficits with [the
disability officer] or [Mr. Vecchio]. He is not
considered credible. NON-severe.

(Tr. at 316.)

On July 3, 2007, a State agency medical source completed a

Mental Residual Functional Capacity Assessment and found moderate

limitations in the ability to interact appropriately with the

general public and in the ability to accept instructions and

7

respond appropriately to criticism from supervisors.  (Tr. at 336.)

On the same date, the source also completed a Psychiatric Review Technique form and opined that Claimant had severe mental impairments that resulted in mild restriction in activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in concentration, persistence and pace and no episodes of decompensation.  (Tr. at 349.)  The State agency source wrote that Claimant was partially credible, but that Claimant was able to

> complete a variety of activities as noted above.  The CE [Mr. Vecchio] bases his [diagnosis] of cognitive [disorder not otherwise specified] on a head injury reportedly from childhood. [Claimant] has a GED, which does not suggest deficits in his ability to learn.  FO did not observe problems during the initial interview.

(Tr. at 351.)

The record includes treatment notes from Process Strategies dated July 11, 2007, October 2, 2007, October 23, 2007, November 20, 2007, January 3, 2008, February 28, 2008, March 26, 2008, May 22, 2008, July 3, 2008, and August 29, 2008.  (Tr. at 455-61.) Claimant reported some improvement with medication.  (Tr. at 458.)

At the administrative hearing, the medical expert, Dr. Blair, testified that

> [t]he psych eval we have is from Ernie Vecchio, a master's level psychologist, who is not, I should note to my knowledge, a neuropsychologist and I am and I know that community and I don't know of him being there.  He for some reason has decided to diagnose a cognitive disorder NOS and says that it's made when a neuropsychological impairment caused by a brain injury

8

affects three functional systems, etcetera. The, the examinee, Mr. Shelton, reported a head injury when he was five and aside from that, that's the only thing Vecchio's got to work with and he's just, he's extrapolated beyond belief. He hasn't tested anything, he didn't give any tests that I recall and he's just decided that he probably has a brain injury. I have to disagree with that because there's absolutely no evidence of a brain injury in this record. The fact that he had a lea[r]ning disability is not related, necessarily, to any kind of a brain injury and the same thing with the behavioral and emotional difficulties, there just isn't anything here to substantiate a cognitive disorder NOS .... He also diagnosed an intermittent explosive disorder on the basis of his self-report of his problems which he talked about here today and a personality disorder NOS .... [H]e said he's felt different and weird ever since he had the injury and that may or may not be the case, but we don't have any record of it. And ... he feels he has an emotional deficiency, and he said I've had people tell me that I've exuded darkness, where does that come from, am I really that scary, would a guy with a GED with those kinds of reports, I would really like to do, you know, personality testing like the MMPI and find out more about what's the voracity of this and then kind of what's, ... in it, but we don't have that, so we're a little bit over diagnosed here.

(Tr. at 50-51.)

Dr. Blair further testified that treatment notes from Process Strategies showed improvement with medication. (Tr. at 53.) Dr. Blair testified that Claimant had an impulse control disorder, that he does not meet or equal a listing and that he would be limited to less than occasional contact with coworkers, occasional contact with supervisors, no contact with the public, and he is limited to detailed work activity at moderate stress levels. (Tr. at 54-57.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not

supported by substantial evidence because the ALJ failed to develop the record by not ordering a psychological evaluation that included an MMPI, given the severity of Claimant's personality disorder and in light of the recommendation from the medical expert who testified at the administrative hearing.  (Pl.'s Br. at 2-5; Pl.'s Reply at 1-3.)

In response, the Commissioner argues that four different psychologists examined Claimant or his medical records and offered opinions about Claimant's limitations and overall mental condition. According to the Commissioner, the opinions of these sources were consistent with the ALJ's residual functional capacity finding, and the ALJ adequately developed the record with respect to Claimant's mental condition.  The Commissioner further asserts that the ALJ's residual functional capacity finding is supported by substantial evidence and includes all of Claimant's mental limitations. (Def.'s Br. at 1-12.)

In Cook v. Heckler, the Fourth Circuit noted that an ALJ has a "responsibility to help develop the evidence." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986).  The court stated that "[t]his circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely on evidence submitted by the claimant when that evidence is inadequate." Id.  The court explained that the ALJ's failure to ask further questions and to

10

demand the production of further evidence about the claimant's arthritis claim, in order to determine if it met the requirements in the listings of impairments, amounted to a neglect of his duty to develop the evidence.  Id.

Nevertheless, it is Claimant's responsibility to prove to the Commissioner that he or she is disabled.  20 C.F.R. §§ 404.1512(a) and 416.912(a) (2009).  Thus, Claimant is responsible for providing medical evidence to the Commissioner showing that he or she has an impairment.  Id. §§ 404.1512(c) and 416.912(c).  In Bowen v. Yuckert, the Supreme Court noted:

> The severity regulation does not change the settled allocation of burdens of proof in disability proceedings.  It is true . . . that the Secretary bears the burden of proof at step five . . . [b]ut the Secretary is required to bear this burden only if the sequential evaluation process proceeds to the fifth step.  The claimant first must bear the burden . . . of showing that . . . he has a medically severe impairment or combination of impairments . . . .  If the process ends at step two, the burden of proof never shifts to the Secretary.  . . .  It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.

Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Although the ALJ has a duty to fully and fairly develop the record, he is not required to act as plaintiff's counsel.  Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994).  Claimant bears the burden of establishing a prima facie entitlement to benefits.  See Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); 42 U.S.C.A.

11

§ 423(d)(5)(A)("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.")   Similarly, he or she "bears the risk of non-persuasion." Seacrist v. Weinberger, 538 F.2d 1054, 1056 (4th Cir. 1976).

The court proposes that the presiding District Judge find that the ALJ did not err in his duty to develop the record in this matter.   The evidence of record related to Claimant's mental impairments was adequate.   The Commissioner referred Claimant for a consultative mental examination by Mr. Vecchio, two State agency medical sources reviewed the medical evidence of record and completed Psychiatric Review Technique forms and a Mental Residual Functional Capacity Assessment, Claimant received treatment at Process Strategies and Dr. Blair testified at the administrative hearing.

Dr. Blair was able to render an opinion at the administrative hearing about Claimant's impairments and their impact on Claimant's residual functional capacity.   He did not indicate that the evidence was insufficient such that he could not testify about these issues.   Rather, Dr. Blair, a neuropsychologist, took issue with Mr. Vecchio's diagnoses because they were unsupported by diagnostic testing.   He testified that Claimant was a "little bit over diagnosed ...."   (Tr. at 50-51.)   While he stated that he

12

"would really like to do ... personality testing like the MMPI and find out more about what's the voracity of this and then kind of what's, what's in it," the context of his comment makes clear that he was not describing a need for further development of the record, but instead, was making a statement about the fact that the evidence of record did not warrant Mr. Vecchio's diagnoses.  The State agency medical sources also took issue with Mr. Vecchio's findings.  Moreover, Dr. Blair testified that since receiving treatment, which occurred after Mr. Vecchio examined Claimant, medication and counseling had helped Claimant's condition.

The ALJ relied on this evidence in finding that Claimant's impulse control disorder limited Claimant to jobs involving only moderate stress with detailed type instructions and tasks, that Claimant should have no contact with the public, less than occasional contact with coworkers and occasional contact with supervisors.  (Tr. at 19.)  With these limitations, Claimant is able to return to his past work as a custodian.  (Tr. at 23.)

The suggestion that the evidence of record in this matter related to Claimant's mental condition was in need of further development is simply unconvincing.  The Commissioner and ALJ adequately developed the record by obtaining Mr. Vecchio's report, Claimant's testimony and Dr. Blair's testimony.  Claimant's counsel never asked for further development of the record, nor did counsel conduct such testing on her own.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge AFFIRM the final decision of the Commissioner and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable Thomas E. Johnston.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties and Judge Johnston.

14

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

_March 10, 2011_
        Date

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge

15